Filed 6/15/22  P. v. Morales CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDGAR SAUL ROJAS MORALES,<br><br>    Defendant and Appellant. | 2d Crim. No. B310914<br>(Super. Ct. No. 19F-00370)<br>(San Luis Obispo County) |

A jury convicted appellant Edgar Saul Rojas Morales of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) and found true special allegations he caused bodily injury to more than one victim (Veh. Code, § 23558) and had two prior drunk driving convictions (Pen. Code, § 191.5, subd. (d)).  The jury also convicted him of driving under the influence and causing injury to a second victim (Veh. Code, § 23153, subd. (a)); driving with a blood alcohol level of at least .08 percent and causing injury, again to the second victim (*id.*, § 23153, subd. (b)); and driving with a suspended license (*id.*,

§ 14601.2, subd. (a)). The trial court sentenced Morales to 15 years to life in prison.

Morales contends the trial court erred by: (1) admitting statements he made to officers after waiving his *Miranda*[1] rights; (2) restricting defense counsel's closing argument about the effects of Morales's prior brain injury; (3) convicting him of crimes that were lesser included offenses of his vehicular manslaughter conviction; and (4) calculating his presentence custody and conduct credits incorrectly.

We reverse judgment as to the presentence credits but otherwise affirm.

FACTUAL BACKGROUND

Maricela Marquez and her mother Maria Medina were driving home from a quinceañera on the night of December 1, 2018, when appellant's car crossed into their lane and collided head on with Marquez's SUV. Medina suffered catastrophic blunt force injuries when her passenger-side airbag failed to deploy. She died shortly after paramedics arrived. Marquez's airbag deployed and she escaped with minor injuries.

First responders found Morales in the other car semi-conscious and smelling of alcohol. They transported him to Marion Regional Medical Center (MRMC) where surgeons repaired fractures of the hip, tibia, and sternum. They noted a prior head injury in his medical records and ran a CT scan. This revealed a small subarachnoid hemorrhage, but surgeons refrained from operating on his brain when no further bleeding

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

appeared in a scan the next morning.[2]  His blood alcohol level measured 0.157 percent two and a half hours after the collision.

Officer Rachelle Fouts of the California Highway Patrol interviewed Morales at MRMC on December 3.  He appeared alert and responsive.  She advised him of his *Miranda* rights and placed him under arrest for driving under the influence.  Morales agreed to speak with her.  He admitted drinking at a party before the collision but said he stopped by a friend's house for a few hours to sober up before driving home.  The friend asked him to stay but he decided to go home because his sisters were waiting up for him.  Morales remembered swerving when an approaching car's high beams disoriented him.  He next remembered waking in the hospital.  The interview lasted about an hour.

Officer Fouts met with Morales at MRMC a second time on December 5.  Morales provided more details about the evening of the collision and reiterated his belief that oncoming headlights caused him to swerve.  He expressed surprise when told the impact occurred entirely within the opposite lane and asked whether he was being charged with murder.  Officer Fouts stated a passenger in the other car had died.  She confirmed he was being charged with vehicular manslaughter.  Morales was then transferred to the hospital's extended care facility to convalesce before going to jail.

## DISCUSSION

### A. Waiver of Miranda Rights

Morales contends the trial court erred by admitting his statements to Officer Fouts.  He asserts that his injuries and heavily medicated state rendered his waiver of *Miranda* rights involuntary.  Our review is de novo.  "Only if the 'totality of the

---

[2] A subarachnoid hemorrhage is bleeding between the brain and the membrane surrounding it, i.e., the arachnoid space.

circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." (*Moran v. Burbine* (1986) 475 U.S. 412, 421 [89 L.Ed.2d 410], quoting *Fare v. Michael C.* (1979) 442 U.S. 707, 725 [61 L.Ed.2d 197].)

Transcripts of both interviews were admitted into evidence. They confirm Officer Fouts placed Morales under arrest and recited *Miranda* rights at the beginning of both interviews. Morales stated he understood his rights and agreed to speak with her. Morales described the events leading up to the collision in detail, his prior head injury, and his two DUI convictions. Both interviews lasted about an hour. At no point did Morales ask the officer to leave, struggle to comprehend her questions, or answer incoherently. He was well enough to be discharged from acute care after the second interview.

Morales argues Officer Fouts deceived him into waiving his rights by placing him under arrest for driving under the influence instead of vehicular manslaughter. We disagree. A valid waiver of *Miranda* rights does not require an officer to inform the individual of all circumstances that might affect the decision to confess. (See *People v. Molano* (2019) 7 Cal.5th 620, 650, quoting *Colorado v. Spring* (1987) 479 U.S. 564, 576 [93 L.Ed.2d 954] ["the essential requirement of *Miranda* is that a suspect understand 'the nature of his constitutional right—"his right to refuse to answer any question which might incriminate him""'"].) Significantly, he asked whether he was being charged with murder before the officer told him Medina had died.

B. *Precluding Argument About Morales's Prior Head Injury*

Morales contends the trial court erred by restricting how defense counsel could cite their expert's opinions during closing argument. Christopher Howard, Ph.D., opined earlier at trial

that Morales's prior head injury likely affected his vision, spatial perception, and impulse control on the night of the collision.[3] The trial court instructed defense counsel to cite these opinions only when addressing the murder charge, a specific intent crime requiring jurors to decide whether Morales acted with "'conscious disregard for human life.'" (See *People v. Wolfe* (2018) 20 Cal.App.5th 673, 681, citing *People v. Watson* (1981) Cal.3d 290 ["Malice may be implied when a person willfully drives under the influence of alcohol"].) However, it refused defense counsel's request to use the opinions in connection with the vehicular manslaughter charge (a general intent crime) because Morales's subject mental state was not relevant to his guilt. (CALCRIM No. 590; see *People v. Bennett* (1991) 54 Cal.3d 1032, 1036 ["The test [for gross negligence] is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved"].)

The trial court properly limited the use of Dr. Howard's opinions. The People focused on the murder charge in closing and referred to Morales's actual awareness of risk only in this context. The record does not support Morales's contention that the People's argument conflated the evidence in a way that indirectly helped them prove gross negligence, and thus invited Dr. Howard's opinions in rebuttal.[4] In addition, we presume

---

[3] Morales fell from a balcony eight months before his collision with Marquez and Medina. A neurosurgeon performed an emergency craniotomy to relieve pressure on his brain.

[4] In fact, it appears defense counsel skirted the court's limiting order. He argued in closing: "The other part that is true, and Officer Fouts pointed this out, on that night he wasn't wearing his glasses, that goes to the fact that he wasn't being grossly negligent, he was just not able to see. Combined with *all*

jurors understood and followed the trial court's instructions when considering the evidence and deliberating guilt on each count. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431.)

*C. Lesser Included Offenses*

The jury convicted Morales on two counts of DUI causing injury. (Veh. Code, § 23153, subds. (a), (b).)[5]  Morales contends we must reverse and dismiss these convictions because they are lesser included offenses of his gross vehicular manslaughter conviction. We would agree if the deceased, Ms. Medina, were his only victim. (See *People v. Miranda* (1994) 21 Cal.App.4th 1464 [conviction for DUI with injury under section 23153(a) reversed as lesser included offense of vehicular manslaughter conviction when same victim identified in both counts].) She was not. Charging documents identified Ms. Marquez's injuries, not Ms. Medina's death, as the basis both DUI charges. "[W]here, as here, a defendant commits vehicular manslaughter with gross negligence – an act of violence against the person – he may properly be punished for injury to a separate individual that results from the same incident." (*People v. McFarland* (1989) 47

---

*of those other factors that Dr. Howard talked about* we're not at gross negligence, but certainly possibly negligence." (Italics added.)

[5] Prosecutors may charge felony DUI (i.e., DUI causing bodily injury) separately under subdivisions (a) and (b) of Vehicle Code section 23153. Subdivision (a) allows prosecutors to prove the driver's physical and mental abilities were impaired by drugs or alcohol using evidence such as field sobriety test results. In contrast, subdivision (b) requires no evidence of impairment if the driver's blood alcohol content was 0.08 percent or greater. The court stayed appellant's conviction under subdivision (b) pursuant to Penal Code section 654.

Cal.3d 798, 803-804; see *People v. Machuca* (2020) 49 Cal.App.5th 393 [affirming separate convictions for vehicular manslaughter and DUI because the crimes involved different victims].)[6]

*D. Presentence Custody and Conduct Credits*

Morales contends the court should have awarded him custody credits for the 42 days he spent convalescing at MRMC before going to jail.  We agree.  Defendants must receive credits for time "in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, *hospital*, prison, juvenile detention facility, or similar residential institution." (Pen. Code, § 2900.5, subd. (a), italics added.)  MRMC is a hospital.  While Morales's injuries made it unnecessary for officers to physically restrain him, the record indicates they regulated his behavior during his recovery. (See *People v. Reinertson* (1986) 178 Cal.App.3d 320, 327 [custody involves regulation of behavior or a supervised and structured lifestyle].)  Officer Fouts testified she placed him under arrest when she found him awake and seated in a wheelchair two days after the collision.  Medical records state he was cleared for discharge into police custody on December 5, which suggests he regained some degree of mobility by that time.  We cannot assume his injuries alone prevented him from relocating to another care facility or discharging himself earlier.

Morales also contends the trial court erred when it limited his conduct and work time credits under Penal Code section

---

[6] Dissenters in *McFarland* (Mosk, J.) and *Machuca* (Snauffer, J.) posited the multiple victim exception should not apply under these circumstances.  Morales quotes liberally from the latter's dissenting opinion.  We follow the majority.

2933.1 by erroneously considering vehicular manslaughter a qualifying violent felony.[7]  The People concede the point.

DISPOSITION

The judgment is affirmed except for Morales's presentence credits.  The current abstract of judgment reflects 781 days of custody credit and 117 days of conduct credits, for a total of 898 days of presentence credits.  The trial court shall amend the abstract to reflect 824 days of both custody and conduct credits totaling 1,648 days, then forward a certified copy of the same to the California Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P.J.


TANGEMAN, J.

---

[7] Penal Code section 2933.1 limits a defendant's credits to 15 percent of actual time spent in custody if they are convicted of a qualifying violent felony.

Jesse J. Marino, Judge
Superior Court County of San Luis Obispo

_____


Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Nikhil Cooper, Amanda V. Lopez and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.